IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
June 8, 2022 Session

**BRYAN WILLIAMS v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Gibson County
Nos. 18734, 18735, 18736  Clayburn Peeples, Judge**

———————————————————

**No. W2021-00823-CCA-R3-PC**

———————————————————

Bryan Williams, Petitioner, was convicted of multiple sex offenses and a panel of this Court affirmed his convictions on direct appeal. *State v. Bryan Williams*, No. W2013-00418-CCA-R3-CD, 2014 WL 280398, at *1 (Tenn. Crim. App. Jan. 24, 2014), *no perm. app. filed*. Petitioner now appeals from the Gibson County Circuit Court's denial of his petition for post-conviction relief, in which he alleged that he received ineffective assistance of counsel. After reviewing the record, oral argument, and the briefs of the parties, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and ROBERT H. MONTGOMERY, JR., J., joined.

Justin P. Jones, Brownsville, Tennessee, for the appellant, Bryan Williams.

Herbert H. Slatery III, Attorney General and Reporter; Richard D. Douglas, Senior Assistant Attorney General; Frederick H. Agee, District Attorney General; and Jason C. Scott, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Petitioner was placed on community supervision for life following a conviction for attempted aggravated sexual battery in September, 2009. *Id.* at *2. In July 2011, Petitioner exposed himself to a woman at a gas station and was placed on Global Positioning System ("GPS") monitoring. *Id.* In November, 2011, police officers with the Milan Police Department received a notification that Petitioner's GPS bracelet was removed or damaged and later arrested him at his girlfriend's house. *Id.* Following his

arrest, investigators linked Petitioner to multiple sex offenses that occurred between August, 2010 and November, 2011. *Id.* at *6.

On February 27, 2012, the Gibson County Grand Jury returned three indictments against Petitioner.[1]  *Id.*  In case number 18734, Petitioner was indicted for two counts of aggravated rape, one count of rape, three counts of especially aggravated kidnapping, four counts of aggravated burglary, one count of aggravated assault, 10 counts of felony violation of community supervision conditions, and four counts of misdemeanor violation of community supervision conditions.  In case number 18735, Petitioner was indicted for one count of indecent exposure and two counts of misdemeanor violation of community supervision for life.  In case number 18736, Petitioner was indicted for simple possession of marijuana and introduction of contraband into a penal facility.  By agreement between the parties, the trial court consolidated the separate indictments into one indictment. *Id.*

The case proceeded to a jury trial.  *Id.*  At the conclusion of the trial, the jury acquitted Petitioner of the one count of rape in case number 18734 and of introduction of contraband into a penal facility in case number 18736.  *Id.*  The jury found Petitioner guilty of the lesser-included offense of aggravated kidnapping in one of the especially aggravated kidnapping counts in case number 18734.  *Id.*  The jury otherwise convicted Petitioner as charged. *Id.*  Petitioner received a total effective sentence of 62 years. *Id.* Petitioner filed a direct appeal and a panel of this Court affirmed. *Id.* at *9.

On January 23, 2015, Petitioner filed a timely pro se petition for post-conviction relief alleging various claims of ineffective assistance of counsel.  The post-conviction court appointed counsel.  Through post-conviction counsel, Petitioner filed an amended petition for post-conviction relief incorporating his original allegations and raising two additional claims of ineffective assistance of counsel.  The post-conviction court held a hearing on May 12, 2021.

Trial counsel testified that he represented Petitioner in 2012.  He confirmed that there were three indictments against Petitioner.  Trial counsel elected to consolidate the indictments because he thought that if Petitioner lost on one indictment, the State would offer plea deals on the remaining indictments that would result in a longer sentence for Petitioner.  He explained that a jury "might be more lenient on certain aspects" if he tried the cases together.  Trial counsel testified that he spoke with Petitioner and told him that "it might be better in the long run [to try the offenses together] because he was from

---

[1] Because the technical record does not contain the indictments, we take judicial notice of the record from Petitioner's direct appeal.  *See* Tenn. R. App. P. 13(c); *State v. Lawson*, 291 S.W.3d 864, 869 (Tenn. 2009).

Milan, people knew him in Milan[,] and there might be people on the jury that would give him more benefit of the doubt."

Trial counsel said that consolidating the indictments was "a strategy decision." Trial counsel testified that he visited Petitioner in jail and discussed the decision to consolidate the indictments. He explained how trying the cases together could confuse the jury and create doubt in the jury's mind. Trial counsel recalled Petitioner responding, "You're the lawyer." Trial counsel again confirmed that he spoke with Petitioner about the three separate indictments. He said, "I sat down with [Petitioner] . . . on several occasions with the indictments and we talked about it. . . . Talked about the trial, how serious it was and the consequences of it."

When trial counsel was asked why he did not sever the community supervision violation counts, he replied, "I really can't answer that, other than it create[d] more confusion and doubt." Trial counsel testified that if Petitioner tried the cases separately, he could have received close to a 100-year sentence. Trial counsel maintained that his strategy benefited Petitioner even though the jury heard about Petitioner's prior sex offense because he was found not guilty on one count of rape.

Trial counsel testified that there was a plea offer of 40 years at 100 percent. Trial counsel conveyed the offer to Petitioner but Petitioner declined. On cross-examination, trial counsel confirmed that Petitioner "left [whether to consolidate the indictments] up to [him.]" Trial counsel agreed that consolidating the indictments was in part for the State to only get "one bite at the apple."

Petitioner testified that he did not understand what an indictment was at the time of his trial. He said that he thought an indictment "was about drugs." Petitioner testified that he did not know he could have had separate jury trials. Petitioner acknowledged that trial counsel explained his maximum sentence exposure and showed him the indictments. Petitioner confirmed that he read the indictments but maintained that he "[s]till didn't understand [them]." Petitioner agreed with post-conviction counsel's statement that trial counsel did not explain the benefits, risks, pros, and cons of consolidating the indictments. Petitioner again testified that he did not understand the indictments and that he told trial counsel, "Hey man, it's up to you. You're the lawyer. You're the lawyer[.]"

Petitioner claimed he told trial counsel he wanted to take the stand but that trial counsel told him "no." Petitioner said that he rejected the State's plea deal and told trial counsel, "Go back to [the State] and tell them 20 or 15 [years] at a lower amount of percent."

On cross-examination, Petitioner admitted that he entered a plea agreement in a prior matter in Carroll County. Petitioner admitted that he was indicted in that case, but maintained that the court did not refer to an "indictment." He explained that in Carroll County, the court used the word "charges" rather than indictment. When asked whether Petitioner wished he had taken the 40-year plea deal, Petitioner replied "no." Petitioner agreed it was his decision to go to trial and said that he wanted to testify at trial. However, Petitioner decided not to testify "based on the decision from [his] lawyer[.] [He] didn't want to mess up what [trial counsel] had going with the trial, so [he] just let it go."

The post-conviction court found Petitioner's testimony unpersuasive regarding "what he was and what he wasn't told[.]" The post-conviction court requested additional briefing on the consolidation of indictments issue.

Both parties filed memorandums supporting their positions and the post-conviction court held a brief hearing on May 24, 2021. After listening to argument, the post-conviction court stated that trial counsel's testimony indicated that "his decision not to [try the cases separately] in this case was part of his overall trial strategy specifically with regard to sentencing should [Petitioner] be found guilty of multiple offenses." The court found that "to a small extent," trial counsel's strategy worked. The post-conviction court concluded that trial counsel's agreement to consolidate the indictment or failure to sever the various charges "did not have that great a prejudicial effect if [it] had any" in light of the nature and number of charges against Petitioner. The post-conviction court reasoned, "It seems clear in this case that the jury was able to and did evaluate each charge against [P]etitioner separately and independently." The post-conviction court noted that the jury found Petitioner not guilty on two counts, one of which was rape. The court found the evidence against Petitioner overwhelming and found no evidence to indicate the jury "was confused regarding its work." The post-conviction court denied post-conviction relief, concluding Petitioner did not show that trial counsel's performance was deficient or that trial counsel's representation prejudiced Petitioner. Petitioner now appeals.

*Analysis*

Petitioner contends that the post-conviction court erred in denying post-conviction relief. Specifically, Petitioner argues that trial counsel's failure to file a pre-trial motion to sever certain offenses and trial counsel's agreement to consolidate Petitioner's indictments constituted ineffective assistance of counsel. Petitioner also alleges that trial counsel failed to adequately meet and prepare him for trial. However, Petitioner provides no argument in his brief to support the allegation that trial counsel failed to adequately meet and prepare him for trial. The issue is therefore waived. *See* Tenn. R. App. P.

27(a)(7) (requiring briefs to set forth "the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record" or otherwise be treated as waived). The State responds that the post-conviction court properly denied post-conviction relief.

Post-conviction relief is available for any conviction or sentence that is "void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. In order to prevail in a claim for post-conviction relief, a petitioner must prove his factual allegations by clear and convincing evidence. T.C.A. § 40-30-110(f); *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998). On appeal, a post-conviction court's findings of fact are conclusive unless the evidence preponderates otherwise. *Vaughn v. State*, 202 S.W.3d 106, 115 (Tenn. 2006). Accordingly, questions concerning witness credibility, the weight and value to be given to testimony, and the factual issues raised by the evidence are to be resolved by the post-conviction court, and an appellate court may not substitute its own inferences for those drawn by the post-conviction court. *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001). However, the post-conviction court's conclusions of law and application of the law to the facts are reviewed under a purely de novo standard, with no presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001).

Both the Sixth Amendment to the Constitution of the United States and article I, section 9 of the Tennessee Constitution guarantee the right of an accused to the effective assistance of counsel. *See Davidson v. State*, 453 S.W.3d 386, 392-93 (Tenn. 2014). In order to sustain a claim of ineffective assistance of counsel, a petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under the two-prong test established by *Strickland v. Washington*, 466 U.S. 668, 687 (1984), a petitioner must prove that counsel's performance was deficient and that the deficiency prejudiced the defense. *See State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of counsel applied in federal cases also applies in Tennessee). Because a petitioner must establish both elements in order to prevail on a claim of ineffective assistance of counsel, "failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997). "Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 697).

The test for deficient performance is whether counsel's acts or omissions fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 688; *Henley*, 960 S.W.2d at 579. This Court must evaluate the questionable conduct from the attorney's perspective at the time, *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982), and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *State v. Burns*, 6 S.W.3d 453, 462 (Tenn. 1999).

Even if a petitioner shows that counsel's representation were deficient, the petitioner must also satisfy the prejudice prong of the *Strickland* test in order to obtain relief. The question is "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). A petitioner must show that there is a reasonable probability "sufficient to undermine confidence in the outcome" that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Burns*, 6 S.W.3d at 463 (quoting *Strickland*, 466 U.S. at 694).

In evaluating an attorney's performance, this Court "must be highly deferential and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462 (citing *Strickland*, 466 U.S. at 689). In addition, this Court must avoid the "distorting effects of hindsight" and must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. 689-90. Moreover, "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." *Id.* at 688-89. However, "'deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation.'" *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (quoting *Goad*, 938 S.W.2d at 369).

Trial counsel and Petitioner both testified that Petitioner left the trial strategy up to trial counsel, stating, "You're the lawyer." Trial counsel testified that consolidating the indictments was a "strategy decision." He explained that foregoing severance of the charges might confuse the jury and create doubt in the jury's mind. Trial counsel also believed that the jury might be more lenient as to certain aspects of Petitioner's case if it heard all of the offenses at the same time. Petitioner did not present any evidence at the evidentiary hearing that trial counsel's strategic decisions fell below an objective standard of reasonableness under prevailing professional norms.

- 6 -

In denying post-conviction relief, the post-conviction court stated it found no evidence that trial counsel's tactic, even if it were deficient, prejudiced Petitioner and stated "[it] may have actually helped him slightly." The evidence does not preponderate against the findings of the post-conviction court. *Vaughn*, 202 S.W.3d at 115. Petitioner is not entitled to post-conviction relief.

*Conclusion*

Based on the foregoing, we affirm the judgment of the post-conviction court.

_____
TIMOTHY L. EASTER, JUDGE